UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:10-CV-582-H

LIBERTY MUTUAL FIRE INSURANCE COMPANY     PLAINTIFF

V.

KENNETH HARRIS and KATHRYN L. HARRIS
And RODGER D. BUNKER              DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

Liberty Mutual Fire Insurance Company ("Liberty Mutual") seeks a declaratory judgment against Defendants regarding coverage of an incident between Rodger Bunker ("Bunker") and Kenneth Harris ("Harris") and the validity of an assignment from Harris and Kathryn Harris to Bunker. Bunker has opposed the motion and requested a continuance. The Court will grant Liberty Mutual's motion for declaratory judgment in part and deny Bunker's motion for a continuance.

I.

Liberty Mutual had issued a Homeowners Insurance Policy to Kenneth and Kathryn Harris ("the Policy") which included personal liability coverage. In September of 2006, Harris and Bunker had a physical altercation in Scottsdale, Arizona in which Bunker sustained injuries (the "Incident") which led to a series of criminal and civil court proceedings. Harris was convicted of two counts of aggravated assault. In Arizona, Bunker brought a civil suit against Harris in which he was found liable for negligence, assault, battery, and intentional infliction of emotional distress via Bunker's unopposed motion for summary judgment. At a trial on

damages, judgment was entered against Harris in the amount of $503,898.30.

Bunker has attempted to collect the judgment in several ways. He filed a garnishment proceeding in Arizona against Liberty Mutual. He filed an action in Kentucky state court to register the Arizona judgment and obtain a judgment lien against Harris' assets. In response to the latter proceeding, Harris and Bunker entered into an agreement in which Harris paid Bunker $75,000 and assigned to Bunker all rights and any claims he may have against Liberty Mutual; in return, Bunker agreed not to execute any of the remaining judgment against Harris' assets.[1] At this point in time, the garnishment proceeding against Liberty Mutual in Arizona has been continued.

After both the garnishment proceeding had commenced and the Kentucky state court action had been filed, Liberty Mutual filed this declaratory judgment action.

II.

Before addressing the motion for declaratory judgment, the Court must decide whether it should abstain in light of the concurrent garnishment proceeding in Arizona. In *Scottsdale Ins. Co. v. Flowers,* 513 F.3d 546 (6th Cir. 2008), the Sixth Circuit provided guidance for these circumstances. A district court should consider the following five factors:

> "(1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of 'procedural fencing' or 'to provide an arena for res judicata;' (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective."

*Id.* at 554. The Court will address each factor in turn.

---

[1] Kathryn Harris also made an assignment to Bunker of at least some of her rights to or claims under the Liberty Mutual Policy.

2

A.

The first two factors are closely related., *Id.* at 557. Here, the declaratory action has the ability to settle both the state and federal actions as well as clarify the legal relations of the parties in both the actions. Should this Court decide that the Policy does not cover the Incident, then the garnishment proceeding would be resolved and the effect of the assignment and settlement between Harris and Bunker would be moot. Should this Court determine that the Policy covered the Incident, then the garnishment could proceed. Both of these factors weigh in favor of exercising jurisdiction.

B.

The third factor concerns the motives of the federal plaintiff in filing the declaratory judgment action. *Id.* at 558. In this case, Liberty Mutual was not an original party to the underlying state civil action, but was made a party in the Arizona garnishment proceeding in July of 2010. Liberty Mutual filed this action in September of the same year. "[W]hen the plaintiff has filed his claim after the state court litigation has begun, we have generally given the plaintiff 'the benefit of the doubt that no improper motive fueled the filing of [the] action.'" *Id.* at 558 (quoting *Bituminous Cas. Corp. v. J&L Lumber Co.,* 373 F.3d 807, 814 (6th Cir. 2004)). On the other hand, in many cases, the federal plaintiff is not yet a party to the state court action when the declaratory judgment action is filed. *See, e.g., id.* at 550. Because Liberty Mutual was a party to the garnishment proceeding before filing this action, it may be able to bring these defenses in Arizona. *See Brillhart v. Excess Ins. Co. Of Am.,* 316 U.S. 491, 495 (1942) (finding that a district court should consider whether the federal claims "could adequately be tested in the garnishment proceeding."). This scenario suggests procedural fencing. Given the presumption

announced by the Sixth Circuit and the unique set of facts in this case, this factor may be neutral or weigh slightly in favor of abstention.

C.

The fourth factor looks to the effect of the declaratory judgment action on federal - state court relations[2] and the fifth factor considers whether other better or more effective remedies exist. The Court will consider these factors together because both turn on the fact that Kentucky law governs the interpretation of the Policy's coverage and validity of the Policy's assignment.

The parties do not dispute that Kentucky law applies to the interpretation of the Policy. While normally the application of federal, rather than state, law weighs in favor of the exercise of jurisdiction, *Scottsdale,* 513 F.3d at 560, here, the Arizona state court would be asked to apply Kentucky law. The application of Kentucky law by a Kentucky federal court would favor the exercise of federal jurisdiction in these circumstances.

The Sixth Circuit has counseled that if underlying factual issues are important to resolution of the case, then abstention may be appropriate. *Id.* Similarly, Bunker argues that the Arizona garnishment proceeding is better or more effective than this federal action because the relevant facts will determine coverage. The Kentucky Supreme Court has stated that "[i]t is well settled that the proper interpretation of insurance contracts generally is a matter of law to be decided by a court." *Cincinnati Ins. Co. v. Motorists Mut. Ins. Co.,* 306 S.W.3d 69, 73 (Ky. 2010). As explained below, no unique circumstances require resolution of any factual issues in

---

[2] District courts should consider the following three sub-factors when analyzing the "friction between federal and state courts": "(1) whether the underlying factual issues are important to an informed resolution of the case; (2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and (3) whether there is a close nexus between underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action." *Scottsdale,* 513 F.3d at 559-560.

4

order to determine coverage here.  Furthermore, the Arizona Court has expressed a reluctance to make coverage determinations by deciding to continue the garnishment proceeding and transfer those proceedings to a Superior Court Judge.

Therefore, the final two factors also weigh in favor of the exercise of jurisdiction. Because four of the five factors favor the exercise of jurisdiction, the Court will decline to abstain and will turn to the substantive merits of the declaratory judgment action.

III.

Liberty Mutual has made two arguments suggesting that Bunker cannot pursue these claims against the Policy.  Liberty Mutual has argued that the assignments from Kathryn and Kenneth Harris to Bunker are invalid and that the settlement between Bunker and Harris erases any claim Bunker may have against Liberty Mutual.  Bunker argues that Harris did not assign his policy, but rather his rights against Liberty Mutual.

Kentucky law allows an insurance company to dictate the terms under which its policy may be assigned, if at all.  KRS §304.14-250(1).  The Policy clearly states that an assignment is invalid unless Liberty Mutual has given its written consent, which was not provided here. However, the Policy contemplates for personal liability actions to be brought against Liberty Mutual once "the obligation of the 'insured' has been determined by final judgment."  This Court fails to see the relevance of the validity of the assignment.  Regardless of the assignment, Liberty Mutual may still be liable to Bunker for the Arizona judgment should the Incident be a covered "occurrence."

The settlement between Harris and Bunker included a covenant not to execute, leaving Harris no longer liable to Bunker for the judgment.  Liberty Mutual argues that, under its

5

contract, it is responsible for indemnity only if Harris is legally liable for payment. Notwithstanding, "courts are virtually all in agreement that, as a starting point, when an insured and tort claimant enter into an agreed judgment accompanied by a covenant not to execute the judgment, that judgment can be enforceable if coverage exists." *Ayers v. C&D Gen. Contractors,* 269 F.Supp.2d 911, 915 (W.D. Ky. 2003). Therefore, the settlement between Bunker and Harris does not preclude Liberty Mutual's liability to Bunker.

IV.

At last, the Court can turn to the coverage issue. The result is clear from a policy interpretation and common sense viewpoint.

The Policy provides coverage for an "occurrence." Fortunately, the Kentucky Supreme Court has discussed the meaning of this term as defined in a similar policy, which also provided coverage for an "occurrence." *Cincinnati Ins. Co.*, 306 S.W.3d at 72. In both policies, an "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* Because neither policy defined accident, the court stated it should be given its "ordinary" and "plain" meaning. *Id.* at 73-74. It went on to state that "[i]nherent in the plain meaning of 'accident' is the doctrine of fortuity," which "consists of two central aspects: intent . . . and control." *Id.* at 74.

The result does not depend on Harris' intent to cause any particular injury to Bunker during the Incident.[3] Where either intent or control is present, the event is not an accident. In fact, in *Cincinnati Ins.,* the Kentucky Supreme Court found no intent, but control, and concluded

---

[3]Bunker argues that the Incident is covered because it does not fit into the Policy exclusion for "bodily injury" "expected or intended by the 'insured'." "However, a court need not consider the applicability of an exclusion if there is no initial grant of coverage under the policy." *Cincinnati Ins.,* 306 S.W.3d at 78, n. 35. Therefore, there is no need for a factual inquiry since Harris' intentions or expectations need not be examined.

6

that the event at issue was not an accident. *Id.* at 74-76.  Here, no one has argued Harris lost control of his own body during the Incident which injured  Bunker.  Hence, the Incident was not an accident, and not an "occurrence."

Here, as is usually the case, a fight is not an accident.  The Policy does not provide insurance coverage where the insured causes injuries during a fight.  By the plain terms of the Policy, Liberty Mutual is not liable for any part of the judgment.

For the reasons stated, and being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Liberty Mutual Fire Insurance Company's motion for declaratory judgment is SUSTAINED and the Incident is not found to be a covered event.

IT IS FURTHER ORDERED that Bunker's Rule 56(d) motion for a continuance is MOOT.

This is a final order.


cc:     Counsel of Record